This is an appeal from a conviction of assault with intent to ravish for which the appellant was sentenced to twelve years' imprisonment.
The appellant urges this court to reverse his conviction for two reasons: (1) Because the trial court refused to declare a mistrial after discovering that the docket sheet and court file, which were not in evidence, had been with the jury during its deliberations and (2) because of the admission into evidence of a subsequent criminal offense committed by the appellant.
 I
There is no dispute over the fact that the docket sheet and the court file were in the jury room during the deliberation of the jury. The court file contained various documents relating to the case including pretrial motions, a copy of a newspaper account of the crime, and a report of presentence investigation. The appellant does not claim that the material was taken to the jury room through any improper act on the part of the representatives of the state. There is no evidence to indicate that either party was responsible for or had any knowledge of this matter before it was disclosed to the trial judge.
It is also undisputed that no juror inspected or read any of this material until after the jury had reached its last unanimous verdict and the voting had been concluded. The record contains evidence to support the statement of appellant's counsel during oral argument before this court that the court file was examined only while the jury was waiting to be brought into the courtroom to announce its verdict.
From the record it appears that the trial judge first learned of the presence of the extrajudicial material before the jury when defense counsel requested a mistrial "on the grounds that the court file was taken in the jury room for deliberation". The judge promptly determined which jurors had examined the court file and when they had so done. The record fully and fairly supports the finding made by the trial judge that "the jury had already voted him guilty in this matter; that the jury was not influenced by anything in here including the docket sheet". Under Title 14, Section 38, Code of Alabama 1940, now Section 13-1-46, Code, 1975, defining assaults or attempted felonies, the jury's function only extends to determining guilt or innocence for the offense of assault with intent to ravish. Punishment is fixed and imposed by the trial judge. Ex parteMorrissette, 200 Ala. 488, 76 So. 430 (1917); Ex parteRichardson, 42 Ala. App. 626, 174 So.2d 693 (1964).
Generally in a criminal case the jury should not consider evidence outside that produced at trial, or take out and consult records, documents, or other material not submitted as evidence on the trial and which may influence their verdict.Leith v. State, 206 Ala. 439, 90 So. 687 (1921). Each case of alleged improper conduct of jurors during trial and deliberation must be judged by its peculiar facts. Bell v.State, 227 Ala. 254, 149 So. 687 (1953). The test is not whether the conduct did influence the jury but whether it might have. Allred v. State, 55 Ala. App. 74, 313 So.2d 195, cert. denied, 294 Ala. 751, 313 So.2d 203, cert. denied,423 U.S. 859, 96 S.Ct. 113, 46 L.Ed.2d 86 (1975); Gilliland v. State,266 Ala. 24, 93 So.2d 745 (1957).
The appellant argues that since the extrajudicial documentsmight have influenced the jury the trial court should have granted his request for mistrial. He contends that a jurorcould have changed his vote had it not been for the allegedly prejudicial documents which had the effect of cementing the juror's position. Under the *Page 1134 
facts of this case such argument rises to a level of impermissible speculation and conjecture. The undisputed facts are that the deliberations had been completed and a unanimous verdict reached before any juror examined the documents. This is not the case where a juror testifies that extrajudicial evidence examined during deliberation and before a verdict was reached did not influence that verdict. Though the influence was improper the jurors were not aware of its existence until after all voting had been completed, a unanimous verdict reached, and they were waiting to return to the courtroom to announce their decision. Under these circumstances the denial of the request for mistrial was proper.
 II
It is also asserted that the trial court erred to a reversal by allowing the admission of testimony concerning an unrelated subsequent offense committed by the appellant.
The evidence presented by the state in its case in chief revealed that on the night of November 12, 1977, Mrs. Rachael Rhodes Kulakowski was returning home on Highway 1-65 in Mobile County, Alabama, when the appellant pulled up beside her, flashed a police badge, and motioned for her to stop. The appellant identified himself as a police cadet, told Mrs. Kulakowski that her automobile was on fire and flames were shooting out of it and offered to take her to a telephone. After she was in the appellant's vehicle, the appellant told her that he first had to meet another police officer and check in with him. The appellant then drove to an old asphalt plant, stopped his car and announced that he was a rapist. He told Mrs. Kulakowski to take off her clothes and he would not hurt her. In feigned compliance with his request, Mrs. Kulakowski bent down in the seat like she was going to take off her shoes and retrieved a .32 caliber Browning automatic pistol from her purse. A struggle ensued when the appellant attempted to take the pistol away from her. The weapon discharged sending a bullet through the front windshield.
During the struggle, Mrs. Kulakowski told the appellant that if he touched her, her father and her fiance would come and "get" him. However the appellant kept telling her that "it wouldn't hurt (her) that it wouldn't do any damage to (her)". Finally the appellant released his grip on the pistol and returned Mrs. Kulakowski to her automobile begging her not to say anything about the matter to anyone.
The appellant's defense was that he was guilty of no wrongdoing and never drove Mrs. Kulakowski anywhere. He maintained that she waved him down and requested that he drive her to a telephone because she was having car trouble. When he told her that it was dangerous for a woman to get into a stranger's car at night, she apparently mistook his intentions and pulled a pistol on him. They struggled and a round was fired. Mrs. Kulakowski then got out of the appellant's car and drove off.
In rebuttal and for the limited purpose of establishing intent the state called Mrs. Pema Hamilton. Mrs. Hamilton testified that on March 10, 1977, a man she identified as the appellant stopped her while she was driving on I-65 in Mobile County. He told her that her car was smoking and fire was coming from it, that he was a policeman and that he would take her home. The appellant drove Mrs. Hamilton to a secluded spot where he told her to take off her clothes because he wanted to have sex with her. When she refused the appellant insisted upon his demands and threatened to kill her. After Mrs. Hamilton continued her resistance, the appellant demanded her money and took three dollars. The appellant was not indicted for any assault against Mrs. Hamilton.
On three separate occasions, including his oral charge, the trial judge instructed the jury that Mrs. Hamilton's testimony was admitted for the sole and limited purpose of showing whether or not there was an intent on the part of the appellant to commit the offense of assault with intent to rape Mrs. Kulakowski. *Page 1135 
The appellant contends that the admission of Mrs. Hamilton's testimony of a similar criminal act committed four months after the charged offense was highly prejudicial and shed no light whatsoever on the supposed intent of the appellant in actions toward Mrs. Kulakowski.
The legal principles that control and govern this case are set forth in McKenzie v. State, 250 Ala. 178, 33 So.2d 488
(1947), holding that in a prosecution for assault with intent to ravish, the testimony of a woman other than the prosecutrix as to the defendant's alleged attempt to rape her approximately two months after the offense with which he was charged was properly admitted as relevant to the inquiry as to the defendant's intent in assaulting the prosecutrix. McKenzie is strikingly similar to the instant case in that in McKenzie both the prosecutrix and the subsequent victim voluntarily accepted a ride in the defendant's automobile, were carried to a by-road several miles outside the city under false pretenses and were then subjected to improper advances from the defendant who threatened each woman with bodily harm unless they acceded to his demands to have sexual intercourse. After dissuasion on the part of each victim, the defendant abandoned his asserted aim and carried each woman back to the city.
The Alabama Supreme Court noted that the evidence of an alleged attempt to rape the subsequent victim was admissible "as tending toward the criminal intent and negativing the innocent intent (or any other, such as a simple assault) as regards the act committed on" the prosecutrix.
 "The single act perpetrated on (the prosecutrix) might have been plausibly claimed to have been done free of intent to ravish, and it was so claimed by the defendant, yet evidence of the recent other alleged attempt to ravish (the second subsequent victim), executed in similar fashion and following a like pattern, tended to eliminate the probability (`chance' as Wigmore says) that the act on the prosecutrix was innocent of such intent and therefore was relevant evidence on this issue." McKenzie, at 250 Ala. 180, 33 So.2d 490.
See also Wilkins v. State, 29 Ala. App. 349, 197 So. 75, cert. denied, 240 Ala. 52, 197 So. 81 (1940).
The position taken by the appellant on this appeal, that the subsequent occurrence between the appellant and Mrs. Hamilton sheds no light on the conduct of the appellant towards Mrs. Kulakowski, was advanced by Mr. Justice Brown in his dissent inMcKenzie, at 250 Ala. 180, 33 So.2d 488. His argument was not accepted then and we respectfully reject it now. The trial court committed no error in allowing evidence of the subsequent criminal transaction. We decline further comment in view of the similarity of the facts of this case to those of McKenzie and the most comprehensive manner in which the respected Mr. Justice Simpson set forth the controlling principles in that decision.
Having searched the record for error and finding none, we affirm the judgment of the trial court.
AFFIRMED.
All Judges concur.